IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CR C-08-885M |
| | § | |
| ERICA L. COFIELD | § | |
| aka ERICA L. AUSTIN | § | |

## MEMORANDUM OPINION

Defendant, Erica L. Cofield, was charged with driving while intoxicated in violation of Texas Penal Code § 49.04 and 18 U.S.C. §§ 7, 13 on the Corpus Christi Naval Air Station ("CCNAS"). (D.E. 17). Because this incident occurred on a military base in the Corpus Christi Division of the Southern District of Texas, jurisdiction is proper in this Court. 18 U.S.C. § 7; United States v. Reff, 479 F.3d 396, 400 (5th Cir. 2007). A bench trial was held on October 30, 2009.

## TRIAL TESTIMONY

The Government called Petty Officer Gregory L. Martin regarding the charge against defendant. Officer Martin has served in the United States Navy since 1997 and currently holds the rank of Masters At Arms second class. He has been stationed at CCNAS for over three years where he serves as a military police officer. He has taken various training courses in order to serve as a military police officer, including a course at the police academy. Moreover, he receives refresher training courses annually.

On July 30, 2008, Officer Martin was on duty as the patrol supervisor. While doing a post check at CCNAS, he came into contact with defendant. He observed her driving toward the base's main gate and then, without signaling, turned left into the pass and tag parking lot. The entrance to the parking lot was closed off by about thirty bright orange traffic cones. Officer Martin noted that the area surrounding the road and the parking lot were well lit. He testified that he saw defendant

turn her car into the parking lot and run over several of the orange traffic cones as she entered the parking lot.

Officer Martin observed defendant signaling to turn back onto the road in the wrong direction.  At that time, he drove up along side of her and made contact with her while he was still in his patrol car.  He inquired whether she was okay to which she responded that she was.  While talking with her, he noticed that her eyes were red.  Officer Martin also testified that defendant's speech was slurred.

Officer Martin then parked his car and approached defendant reintroducing himself.  He reconfirmed that defendant's eyes were red and noticed the strong odor of alcohol coming from defendant.  She was unable to provide him with her driver's license or proof of insurance for her vehicle.  Officer Martin ran her license plates and requested assistance.  The car was registered to defendant.

After Petty Officer Cody arrived to assist, Officer Martin requested that defendant come out of her vehicle.  As she was exiting, she stumbled a little, and Officer Martin reached out to catch her before she fell.  She had to lean against her car to balance herself while talking with Officer Martin.  He asked her if she had had anything to drink to which she admitted that she had been drinking earlier.  He smelled alcohol on her breath whenever she talked.

Officer Martin tried to administer the standard field sobriety tests.  Initially, defendant indicated a willingness to take these tests, but then declined saying because you're going to take me to jail.  During this discussion, she was still balanced against her car.  Officer Martin then called for assistance from a female officer who performed a search of defendant before she was taken to the main security building for further processing.  During the course of this search, the female officer

found defendant's driver's license. Her license was expired and had been suspended.

At the main security building, defendant was asked to provide a sample for the breathalyser. After she refused to take a breathalyser, Officer Cody administered the statutory warnings applicable based on this refusal. He had to explain the form three times to defendant. She also refused to sign the form, but indicated that she understood the warning, which would result in the suspension of her driver's license. Officer Cody also administered the Implied Consent Advisory Form, which defendant did sign acknowledging that she would be banned from driving on the base for one year because of her refusal to take the breathalyser. During the explanations by Officer Cody, defendant was irritated and continually interrupted him.

Officer Martin testified that CCNAS is federal jurisdiction. He explained that there was a large sign beside the road warning drivers before they entered the base that they were about to enter federal land. Defendant was past the federal property by about fifty yards when Officer Martin saw her and almost to the main guard post.

During cross-examination, Officer Martin testified that there was construction on the road surrounding the parking lot where the orange traffic cones were.

Officer Martin acknowledged that he did not ask defendant how many drinks she had. He further conceded that the odor of alcohol may linger long after the drinking is completed. Additionally, he admitted that he could not determine why defendant's eyes were red. During the search of defendant and her car, no alcohol or drugs were found.

Defense counsel discussed with Officer Martin the three phases of an arrest for driving while intoxicated: 1) driving; 2) contact; and 3) standard field sobriety tests. Regarding driving, Officer Martin acknowledged that defendant had not been swerving or drifting, braking erratically, or

accelerating excessively.  Moreover, her turn into the parking lot was not wide.  Defendant was not slouching as she drove and did not have her face too close to the windows.  Regarding his contact with defendant, Officer Martin admitted that her clothing was not dirty, she did not have any bruising, she was not acting unusual, and she did not use abusive language.

During the direct examination, Officer Martin indicated that he reviewed the Alcohol Incident Report to refresh his memory about the defendant's case.  On cross-examination, he acknowledged that references to defendant stumbling and having to lean against her car to maintain her balance were not in the report.  Additionally, the report did not contain any reference to the admission by defendant that she had been drinking.

Officer Martin explained that he did not prepare the report concerning defendant's arrest, but simply checked it for errors and then signed it.  When an individual refuses to sign the report, it is standard operating procedure not to put various information on the form.  He indicated that he was trained in the preparation of reports.  Officer Martin testified that because defendant refused to sign the report, the observations regarding her balance as well as her admission were not put on the report.

**DISCUSSION**

In order to be convicted of the charge in the amended criminal information, the Government must prove three elements beyond a reasonable doubt.  First, it must establish that defendant was operating a motor vehicle in a public place.  Second, it must establish that defendant was intoxicated while driving her car, rendering her incapable of using her normal mental or physical faculties.  Third, it must establish that she was driving her car on land acquired for the use of the United States and under its jurisdiction.

The first element is straightforward.  Officer Martin testified that he saw defendant driving

her car on July 30, 2008.  Thus, the Government has proved this element beyond a reasonable doubt.

Similarly, Officer Martin testified that CCNAS was federal property that had been acquired for the use of the United States.  Moreover, a warning sign informed drivers that they were approaching federal property.  His testimony was uncontroverted.  Accordingly, the Government has proved beyond a reasonable doubt that defendant was driving on land acquired for the use of the United States.  See United States v. Collazo, 117 F.3d 793, 795-96 (5th Cir. 1997).

**A.    Defendant's Driving Was Erratic.**

Officer Martin testified that defendant turned left, without signaling, into a closed parking lot, drove over several bright orange traffic cones, and attempted to drive the wrong way on a one-way street.  Because "the definition of 'intoxicated' includes 'not having the normal use of mental or physical faculties,' any sign of impairment ... would be circumstantially relevant to whether [defendant] was legally intoxicated while driving."  Griffith v. State, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001) (en banc).  Erratic driving may be evidence of intoxication.  See, e.g., Harvey v. State, 173 S.W.3d 841, 847-49 (Tex. App. 2005).  I find that defendant was driving erratically when she approached the main gate.

**B.    The Odor Of Alcohol Emanated From Defendant.**

Officer Martin indicated that he detected a strong odor of alcohol emanating from defendant. The odor of alcohol on defendant is an indicator of intoxication.  McCown v. State, 192 S.W.3d 158, 164-65 (Tex. App. 2006); Lewis v. State, 191 S.W.3d 335, 341 (Tex. App. 2006); see also Harris v. State, 204 S.W.3d 19, 25 (Tex. App. 2006) (odor of alcohol is evidence of intoxication).  Defendant also admitted to Officer Martin that she had been drinking.  Accordingly, I find the evidence establishes that defendant did indeed smell of alcohol.

**C.    Defendant Had Slurred Speech.**

Officer Martin testified that defendant's speech was slurred, which is evidence of intoxication.  See Griffith, 55 S.W.3d at 601; Harris, 204 S.W.3d at 25; McCown, 192 S.W.3d at 165.  There was no evidence challenging the testimony that defendant's speech was slurred.  Accordingly, I find the evidence establishes that defendant had slurred speech when questioned by Officer Martin.

**D.    Defendant Had Bloodshot Eyes.**

Officer Martin observed that defendant's eyes were red.  Bloodshot eyes are evidence of intoxication.  See Harris, 204 S.W.3d at 25; McCown, 192 S.W.3d at 165.  There was no evidence presented challenging Officer Martin's contention that defendant's eyes were bloodshot.  Accordingly, I find that defendant's eyes were bloodshot.

**E.    Defendant Refused To Take The Field Sobriety Tests.**

The refusal to take a field sobriety test may be admitted as evidence demonstrating that defendant was intoxicated.  See Griffith, 55 S.W.3d at 601.  "Evidence of the [driver's] refusal to submit to a breath test is relevant ... [because] it tends to show a consciousness of guilt on his part."  Bartlett v. State, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008).  Indeed, defendant further demonstrated this consciousness because she commented that she expected she was going to jail.  Indeed, she could not stand and talk with Officer Martin without balancing herself against her car.  See Harris, 204 S.W.3d at 25 (unsteady balance is evidence of intoxication).  This consciousness on her part is further demonstrated by defendant's deception regarding the location of her driver's license, presumably because she knew it was both expired and suspended.[1]

---

[1] Alternatively, if defendant's actions regarding her license were not deception, then she was extremely confused about its location.

## CONCLUSION

Taken as a whole, I find the testimony by Officer Martin very credible and the evidence establishes beyond a reasonable doubt that defendant was intoxicated and did not have normal use of her mental or physical faculties. Defendant is guilty of driving while intoxicated on federal property. Sentencing will be set after a Presentencing Investigation Report has been prepared consistent with the Federal Rules of Criminal Procedure.

ORDERED this 4th day of November 2009.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE